IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOROTHY FREDRICKSON, as the
personal representative for
THE ESTATE OF PETER
FREDRICKSON,

       Plaintiff,

v.

CONSOLIDATED SUPPLY CORP., an
Oregon corporation; ELLIOTT
TURBOMACHINERY CO., INC., a
Delaware corporation; JOHN
CRANE, a Delaware
corporation; YARWAY
CORPORATION, a Pennsylvania
corporation,

       Defendants.

05-CV-1704-BR

OPINION AND ORDER

THOMAS B. POWERS
Law Offices of Williams Love O'Leary Craine & Powers, P.C.
9755 S.W. Barnes Road
Portland, OR  97225-6681
(503) 295-2924

      Attorneys for Plaintiff

1 - OPINION AND ORDER

**JEFFREY W. HANSEN**
**WENDY D. VIERRA**
Smith Freed & Eberhard, P.C.
1001 S.W. Fifth Avenue, Suite 1700
Portland, OR  97204
(503) 227-2424

       Attorneys for Defendant Elliott Turbomachinery Co.,
       Inc.


**BROWN, Judge.**

This matter comes before the Court on Plaintiff's Motion for an Award of Costs and Attorneys' Fees (#9).  Plaintiff seeks an award of attorneys' fees and costs incurred as a result of Defendant Elliott Turbomachinery Co., Inc.'s removal of the action to this Court.

For the reasons that follow, the Court **GRANTS** Plaintiff's Motion and awards attorneys' fees to Plaintiff in the amount of **$7,772.00**.


## BACKGROUND

Peter and Dorothy Fredrickson filed a Complaint against Consolidated Supply Corp., Elliott Turbomachinery Co., John Crane, and Yarway Corp. in Multnomah County Circuit Court on December 7, 2004.  When trial began on August 31, 2005, Plaintiff's counsel learned Peter Fredrickson had died that morning.  As a result, Dorothy Fredrickson's counsel moved to continue the case and requested leave to file a second amended

2 - OPINION AND ORDER

complaint asserting claims for wrongful death.

On September 9, 2005, the state court granted the motion for summary judgment filed by Consolidated Supply Corp. and dismissed Consolidated from the state court case.

On September 26, 2005, the state court granted Dorothy Fredrickson leave to file a second amended complaint.

After the state court dismissed Consolidated Supply Corp., the only remaining nondiverse defendant in the state-court action, Elliott Turbomachinery, removed the matter to this Court on November 8, 2005, on the basis of diversity jurisdiction. Defendant Yarway Corporation joined in the removal, but Defendant John Crane did not join in or consent to removal.

On November 21, 2005, Plaintiff Dorothy Fredrickson filed a Motion to Remand and asserted removal was improper because (1) all Defendants did not join in or consent to the removal, (2) dismissal of Consolidated Supply in the state court case was not a voluntary act by Plaintiff that supported removal, and (3) removal was untimely.  Plaintiff also filed a Motion for Award of Costs and Attorney Fees for preparing the Motion to Remand.

On January 6, 2006, Defendants stipulated to an Order remanding this matter back to state court.  Defendants, however, oppose an award of attorneys' fees to Plaintiff.

**STANDARDS**

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999).

**DISCUSSION**

**I.   Removal Was Improper.**

Under 28 U.S.C. § 1446(a), all proper defendants are required to join or to consent to the removal notice. *Id.* at 1266. *See also Emrich v. Touch Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).  There are exceptions to this rule for defendants who have not been served, unknown defendants, and fraudulently joined defendants. *Riggs v. Plaid Pantries, Inc.*, 233 F. Supp. 2d 1260, 1264 (D. Or. 2001).  None of these exceptions, however, apply in this case.  Nevertheless, Defendant Elliott Turbomachinery contends Plaintiff is not entitled to attorneys' fees because a defect in consent to removal can be cured following removal.

Elliott Turbomachinery relies on *Parrino v. FHP, Inc.*, to support its contention that removal was not improper because Elliott Turbomachinery might have been able to cure the lack of consent before the entry of a judgment in this matter. *See* 146 F.3d 699, 703 n.1 (9th Cir. 1998).  The *Parrino* decision,

4 - OPINION AND ORDER

however, did not establish the principle that district courts could ignore or overlook the procedural requirements for removal, but instead the court found appellate courts may overlook noncompliance with removal requirements if the noncompliance is cured before the district court enters a final judgment. *Id*. The Ninth Circuit explained:

> We do not, as the dissent suggests, read *Caterpillar* to authorize district courts to ignore the procedural requirements for removal: to the contrary, we agree with *Caterpillar* that "[t]he procedural requirements for removal remain enforceable by the federal trial court judges to whom those requirements are directly addressed." 117 S. Ct. at 477. We understand *Caterpillar* merely to permit the *Court of Appeals* to treat as cured a procedural defect in the removal process corrected before entry of judgment.

*Id*. (emphasis in original). Thus, although the appellate court may overlook a defect in removal if it is cured before entry of judgment, this Court does not have the same latitude. As noted, this Court must strictly construe the removal statute and resolve any doubt about the right of removal in favor of remand. *See Prize Frize*, 167 F.3d at 1265. Having done so, this Court concludes removal was improper because Elliott Turbomachinery failed to obtain joinder or consent of all Defendants to removal, and none of the exceptions to this requirement are applicable here.[1]

---

[1] Because the Court concludes removal was improper on this basis, it does not address Plaintiff's other contentions.

**II.  Plaintiff Is Entitled to Reasonable Attorneys' Fees and Costs.**

28 U.S.C. § 1447(c) provides:  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  A finding of bad faith is not required to justify an award of attorneys' fees pursuant to § 1447(c).  *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 446 (9th Cir. 1992).

The law requiring joinder in or consent to removal of all defendants is well-settled.  Although Elliott Turbomachinery was aware John Crane had not consented, it proceeded to file a Notice of Removal.  In turn, Plaintiff incurred otherwise unnecessary costs to address Elliott Turbomachinery's defective removal and to establish this Court's lack of jurisdiction.  The Court, therefore, in the exercise of its discretion, finds Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as a result.

**III. Plaintiff Is Entitled to Attorneys' Fees of $7,772.00**

**A.  Standards**

The Ninth Circuit has adopted a lodestar/multiplier approach for assessing the amount of reasonable attorneys' fees. *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir. 1993).  The lodestar/multiplier analysis is made up of two parts.  The court first calculates the lodestar amount by multiplying the number of

6 - OPINION AND ORDER

hours the court finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996).  The party seeking the award of fees must submit evidence to support the number of hours worked and the rates claimed.  *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).  "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'"  *Id.* (citation omitted).

To determine the lodestar, the court may consider the following factors:  (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances;(8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  A rote recitation of the relevant factors is unnecessary as long as the court adequately explains the basis for the award of attorneys' fees.  *McGinnis v. Kentucky*

7 - OPINION AND ORDER

*Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1995).

After determining the lodestar amount, the court assesses whether it is necessary to adjust the lodestar upward or downward based on factors that are "not already subsumed in the initial calculation of the lodestar." *Morales*, 96 F.2d at 363-64.  The lodestar amount is presumed to be the reasonable fee, "and thus a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id.* (citations and internal quotations omitted).

**B.   Analysis**

Plaintiff seeks attorneys' fees of $16,240, which represents 9.9 hours at a rate of $300 per hour by local counsel Thomas Powers, 22.75 hours at a rate of $400 per hour by attorney Charles Siegel, 3 hours at a rate of $250 per hour by attorney Dana Fox, and 23.25 hours at a rate of $100 per hour by paralegal Laura Rodriguez-Hjaltason.  Plaintiff submitted Affidavits of Thomas Powers and Charles Siegel together with fee statements that itemize the hours spent on this matter.

Elliott Turbomachinery objects to both the hourly rates and to the time allegedly spent to prepare the Motion to Remand. Elliott Turbomachinery contends the hourly rates do not reflect

the fees charged in Oregon for similar services and asserts the
hours allegedly spent in preparation of the Motion to Remand are
excessive.  Even though Elliott Turbomachinery does not identify
any specific entries to which it objects, the Court has an
independent duty to review the petition for reasonableness.  *See
Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1993).

     To determine the reasonable hourly rate, this Court
uses the most recent Oregon State Bar Economic Survey published
in 2002 as its initial benchmark.  Attorneys may argue for higher
rates based on inflation, specialty, or any number of other
factors.  Indeed, in *Bell v. Clackamas County,* the Ninth Circuit
criticized the use of outdated economic surveys that might not
reflect the prevailing rate at the time the award is made.  341
F.3d 858, 868-89 (9th Cir. 2003).  Thus, to adjust for the four
years between publication of the 2002 Oregon State Bar Economic
Survey and the award in this case, the Court adds an annual three
percent (3%) inflation factor to the appropriate Oregon State Bar
Survey hourly rate for each provider of legal services.

     The issue of remand in this case was not novel,
complex, or difficult.  Accordingly, the Court finds there is no
justification to award any of the attorneys who performed
services in this matter on behalf of Plaintiff a greater hourly
rate than the benchmark set by the 2002 Oregon State Bar Economic
Survey except an upward adjustment of three (3%) percent annually

9 - OPINION AND ORDER

to account for inflation.

Thomas Powers has eight years of experience litigating personal injury cases for plaintiffs. According to the Oregon Bar Economic Survey, the 75th percentile of Portland attorneys with 7-9 years of experience bills at an average hourly rate of $200, and the 95th percentile bills $225. The majority of Powers's time was spent researching remand issues, reviewing pleadings, and interacting with co-counsel regarding local practice issues. The Court concludes a reasonable rate for Powers's services adjusted for inflation is $239 per hour based on the relative lack of complexity of the legal services he performed in this case.

Charles Siegel has 21 years of experience litigating personal injury cases for plaintiffs. In Plaintiff's Reply to the Motion for attorneys' fees, Siegel requested an hourly rate at the 75th percentile for personal injury work in the alternative to his requested rate of $400 per hour. According to the Oregon Bar Economic Survey, the 75th percentile of Oregon attorneys with 20 years of experience bills at an average hourly rate of $225.[2] The majority of Siegel's time in this case was spent researching and drafting the remand pleadings. The Court,

---

[2] Siegel and Fox are licensed to practice in Texas. The Court does not know how the average rate for attorneys of their experience in Texas compares with those in Oregon. Accordingly, the Court applies the Oregon rates rather than Portland rates.

therefore, concludes a reasonable rate for Siegel's services adjusted for inflation is $253 per hour based on the legal services he performed in this case.

Dana Fox has been admitted to the practice of law for five years.  According to the Oregon Bar Economic Survey, the median hourly rate of Oregon attorneys with 4-6 years experience is $150.  The Court concludes the median hourly rate of $169 per hour adjusted for inflation is appropriate in light of Fox's relative lack of experience and the absence of any additional factors identified by Plaintiff to justify an hourly rate in excess of the median rate.

Rodriguez-Hjaltason is a paralegal.  She spent 23.25 hours on this matter doing administrative tasks such as typing drafts, revising drafts, and e-filing documents and requests an hourly rate of $100.  In the absence of any objection by Elliott Turbomachinery, the Court concludes that hourly rate for Rodriguez-Hjaltason's paralegal services is reasonable.  The Court, however, finds the tasks performed are properly included in the overhead of a law firm rather than recoverable as attorneys' fees.  Thus, the Court concludes Plaintiff is not entitled to attorneys' fees for the work performed by Rodriguez-Hjaltason.

In summary, after applying a three (3%) percent per year inflation factor to the 2002 Oregon State Bar Economic

11 - OPINION AND ORDER

Survey hourly rates and rounding to the nearest dollar, the Court concludes the Plaintiff is entitled to attorneys' fees at the following hourly rates:

| | |
|---|---|
| Thomas Powers | - $239.00 |
| Charles Siegel | - $253.00 |
| Dana Fox | - $169.00 |

In addition, the record reflects Powers, Siegel, and Fox spent nearly 36 hours researching, drafting, and conferring about this relatively straight forward Motion to Remand and the Memorandum in Support. Under the circumstances, the Court finds this time is excessive and reduces this time by ten percent.

Accordingly, the Court finds the Plaintiff is entitled to an award of attorneys' fees as follows:

| | | | |
|---|---|---|---|
| Thomas Powers | ($239.00 x 8.9) | - | $2,131.00 |
| Charles Siegel | ($253.00 x 20.48) | - | $5,185.00 |
| Dana Fox | ($169.00 x 3) | - | $  456.00 |
| | | Total - | $7,772.00 |

**CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees and **AWARDS** attorneys' fees to Plaintiff in the

amount of **$7,772.00.**

IT IS SO ORDERED.

DATED this 21st day of March, 2006.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

13 - OPINION AND ORDER